# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **G.M. & L.M.**

**No. 15-0247** (Wood County 13-JA-8 & 13-JA-9)

**FILED**

November 23, 2015
**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Mother C.H., by counsel **Michael D. Farnsworth**, appeals the Circuit Court of Wood County's January 9, 2015, order terminating her parental rights to G.M. and L.M. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel **Katherine M. Bond**, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather L. Starcher, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights instead of imposing a less restrictive dispositional alternative.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2013, the DHHR filed an abuse and neglect petition against petitioner alleging that G.M. and L.M. were abused and neglected by petitioner and their father, J.M.[2] G.M. was approximately three-months old and L.M. was approximately two-years old at the time the petition was filed. Petitioner was found intoxicated in a hotel room with stolen merchandise and several cans of air duster that she had been huffing while caring for G.M. Petitioner was later arrested for burglary and incarcerated. The petition was filed subsequent to an order entered by the Magistrate Court of Wood County that gave the DHHR emergency custody of the children.

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

[2]Throughout parts of the underlying abuse and neglect proceeding, J.M. is referred to as the father of both children, although it was later determined that he is not G.M.'s father. J.M.'s parental rights to L.M. were terminated and he did not appeal termination. On December 20, 2013, the circuit court also terminated G.M.'s father's parental rights; he did not appeal the termination.

In February of 2013, the DHHR filed an amended petition alleging that petitioner and J.M. abused and neglected the children by exposing them to domestic violence and drug use.

In March of 2013, the circuit court held an adjudicatory hearing and petitioner stipulated to the allegations of abuse and neglect in the petition.[3] Based on her stipulations, petitioner was granted a post-adjudicatory improvement period. Although she was incarcerated at the time, the circuit court accepted a multidisciplinary team's ("MDT") proposed terms for petitioner's improvement period. The terms included, but were not limited to, (1) petitioner submitting to random drug screens, (2) submitting to a psychological evaluation and following all recommendations in the resulting report, (3) obtaining and maintaining a residence and a safe environment for the children, (4) participating in parenting classes, (5) submitting to a domestic violence assessment, and (6) participating in individual therapy to develop coping skills and appropriate behaviors.

In July of 2013, the circuit court held a status hearing following petitioner's release from incarceration. At that hearing, the circuit court reminded petitioner that she was to have no contact with J.M. due to their history of domestic violence and the termination of his parental rights. While incarcerated, petitioner participated in parenting, domestic violence, and life skills groups. Immediately following her release, petitioner actively participated in her improvement period. She remained sober, met with her service providers, and participated in supervised visits with her children. In October of 2013, the circuit court granted petitioner a three-month extension on her improvement period, based on her active participation and progress.

In December of 2013, petitioner continued to comply with the terms of her improvement period and the circuit court granted her a dispositional improvement period based on her compliance. Petitioner continued to do well with the terms of her improvement period. She was enrolled in the drug court program and living at the Fellowship Home, a substance abuse treatment facility.

In March of 2014, the circuit court held a review hearing and ordered petitioner to comply with all services. Petitioner had missed therapy and group sessions for the domestic violence program in which she was enrolled and had been put on restriction at the Fellowship Home for not focusing enough on her substance abuse treatment. In June of 2014, the circuit court held a second review hearing. At that hearing, petitioner admitted that she had been allowing J.M. to have contact with the children in violation of the circuit court's order. Petitioner was also not compliant with a number of services and, as a result, the MDT limited her to supervised visitation only at the Fellowship Home. Petitioner moved the circuit court for an extension of her dispositional improvement period and the guardian moved the circuit court to set a dispositional hearing. The circuit court set a dispositional hearing and reminded petitioner that she was to have no contact with J.M. due to their history of domestic violence.

---

[3]Petitioner admitted that there was a history of domestic violence between herself and J.M., that the children had seen the physical injuries resulting from the domestic violence, and that the children had been exposed to psychological and emotional harm. Petitioner also admitted that her substance abuse affected her ability to parent the children.

In August of 2014, the circuit court held a dispositional hearing, wherein petitioner testified that she had participated in domestic violence classes, therapy, adult life skills, drug court, and parenting classes. She testified that she had been sober for thirteen months. Petitioner also testified that she allowed J.M. to have contact with G.M. and L.M., that she was still having intimate contact with J.M., that she knew that J.M. was still using drugs, and that she knew permitting him to have contact with the children violated the circuit court's order. A Child Protective Services ("CPS") worker testified that while petitioner did well during her improvement period, the DHHR was seeking termination because of petitioner's inability to put the needs and safety of the children above her own needs and the needs of J.M. The CPS worker stated that petitioner told the MDT that she was not having contact with J.M. The CPS worker further testified that petitioner had been provided with services that addressed her poor choice in allowing J.M. to have contact with the children. In December of 2014, the circuit court held a second status hearing and requested that the guardian file her recommendations with the circuit court. The circuit court held its ruling in abeyance. The guardian subsequently filed her report reiterating her position that petitioner's parental rights should be terminated.

Finally, in January of 2015, the circuit court terminated petitioner's parental rights. The circuit court found that petitioner allowed the children to have contact with J.M., that she continued to have an intimate relationship with J.M., that she deceived the MDT and the DHHR regarding her contact with J.M., and that she continued to put her needs above the health and safety of the children. The circuit court concluded that petitioner was unable to implement what she learned during her improvement period. It is from this order that petitioner now appeals.

Petitioner's first assignment of error on appeal is that the circuit erred in determining that there is no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.,* 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's parental rights. Specifically, petitioner argues that the circuit court erred in its determination given that petitioner made significant progress during her improvement period and now recognizes that she exercised poor decision-making in allowing J.M. to have contact with the children. We disagree and find that the circuit

court properly terminated petitioner's parental rights upon a finding that she could not substantially correct the conditions of abuse and neglect.

Pursuant to West Virginia Code § 49-6-5(b)(3), there is "no reasonable likelihood that conditions of abuse and neglect can be corrected" if

> "the abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse and neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child."

The circuit court based its finding upon the evidence that petitioner continued to maintain an intimate relationship with J.M., allowed J.M. to have contact with the children, and lied about it, all in defiance of the circuit court's orders and MDT's recommendations. Although petitioner admitted to the circuit court that there was a history of domestic violence in her relationship with J.M., that the children had seen physical injuries resulting from the domestic violence, and were exposed to psychological and emotional harm resulting from the domestic violence, she continued to expose them to J.M. Petitioner also knew that J.M. was abusing drugs. Furthermore, a CPS worker testified that petitioner was provided with all the available services to address her poor choices in allowing J.M. to have continued contact with the children. As such, the circuit court correctly found that petitioner demonstrated that she was unable to implement what she learned during her improvement period and, therefore, was unable to rectify the conditions of abuse and neglect.

Petitioner incorrectly relies on the holding of *In re: C.M. and C.M.*, 235 W.Va. 16, 770 S.E.2d 516 (2015) in support of her argument that because she was making progress during her improvement period, her parental rights should not have been terminated. However, the facts of *C.M. and C.M.* differ from the facts before the circuit court in this case. In *C.M.*, the mother suffered from a drug addiction that affected her ability to parent. She participated in an improvement period and was able to obtain and maintain sobriety. The circuit court in *C.M.* incorrectly terminated the mother's parental rights because she did not use the drug treatment facility designated by the DHHR and becuase the mother was thwarting reunification efforts and violating the terms of her improvement period. In reversing the circuit court's termination in *C.M.*, we found that there was no evidence on the record to support the termination of the mother's parental rights. However, in the case sub judice, the circuit court's termination of petitioner's parental rights was supported by the record. Petitioner continued to expose the children to J.M. despite receiving and participating in services designed to teach her how to prioritize her children's safety. We have held that it is possible for an individual to demonstrate "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990). Petitioner's actions and admissions demonstrate that she could not implement what she learned through participation in services. Therefore, we find no error in the circuit court's findings.

Petitioner further argues that her decision to expose the children to J.M. should not result in termination of her parental rights because the children were not actually harmed on those occasions. Petitioner also argues that there is no evidence that she exposed the children to J.M. after May of 2014. We disagree. Petitioner's argument clearly demonstrates that she is unable to implement what she learned through participation in services during her improvement period, and that she continues to minimize the threat that J.M. poses to the children, which is exactly what the circuit court found.

Finally, petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a less restrictive alternative. Petitioner contends that the circuit court should have dismissed the case and referred petitioner for community services or continued supervision by the DHHR. Here, the circuit court had no option but to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49–6–5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and when termination is necessary for the child's welfare. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§ ] 49–6–5 . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§ ] 49–6–5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.,* 227 W.Va. 558, 712 S.E.2d 55 (2011). As such, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, the circuit court's January 9, 2015, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5