**STATE OF WEST VIRGINIA**

**FILED**
**September 22, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**IN RE: C.C., A.C., A.C., AND C.C.**

**Nos. 15-1102 and 15-1103**
**(Roane County Nos. 15-JA-25, 15-JA-26, 15-JA-27, and 15-JA-28)**

**MEMORANDUM DECISION**

The petitioners herein, C.C.-1[1] ("Father")[2] and C.C.-2 ("Mother"),[3] appeal from an order entered October 15, 2015, by the Circuit Court of Roane County. By that order, the circuit court terminated the parents' custodial rights to their four minor children, C.C.-3, A.C.-1, A.C.-2, and C.C.-4,[4] but granted them post-termination visitation. On appeal to this Court, the parents contend that the circuit court erred by denying their request for a post-adjudicatory improvement period and terminating their custodial rights. Both the West Virginia Department of Health and Human Resources ("DHHR")[5] and the children's Guardian ad Litem ("Guardian")[6] support the circuit court's disposition of this case.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we find that the facts and legal arguments are adequately presented, and there is

---

[1]Given the sensitive nature of the facts at issue herein, we refer to the parties by their initials only rather than by their full names. *See, e.g.*, *In re: S.H.*, ___ W. Va. ___, ___ n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

[2]Father is represented in this proceeding by D. Kyle Moore.

[3]Andrew G. Vodden and D. Shane McCullough represent Mother.

[4]Numbers have been added to the children's initials to distinguish between them insofar as they share the same initials. *See* note 1, *supra*.

[5]Counsel for DHHR herein is West Virginia Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda.

[6]The children's Guardian ad Litem is Anita Harold Ashley.

no substantial question of law and no prejudicial error. In summary, we conclude that the circuit court did not err by denying the parents' request for a post-adjudicatory improvement period, terminating their custodial rights, and granting the parents post-termination visitation with their children. Accordingly, for these reasons, we find a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying proceeding began on March 30, 2015, when bedbugs were discovered on the two middle children by the staff of their elementary school. The family was notified of the problem, but it persisted, resulting in the bedbugs spreading to the children's classrooms and at least one classmate. On May 13, 2015,[7] the DHHR filed a petition and removed the children from their home. Thereafter, during the June 12, 2015, adjudicatory hearing, Mother was observed to have welts attributable to bedbugs on her arms, suggesting that the home still was infested with bedbugs. By order entered July 6, 2015, the circuit court adjudicated the children to be neglected,[8] finding that they had sustained severe emotional abuse as a result of the bedbugs[9] and that the parents had not treated the children's bites with

---

[7]In 2015, the Legislature recodified the statutes governing abuse and neglect proceedings. These changes became effective February 16, 2015, and thus are applicable to the case *sub judice*. *See generally* W. Va. Code § 49-1-101 *et seq*.

[8]Pursuant to W. Va. Code § 49-1-201 (2015) (Repl. Vol. 2015),

> "[n]eglected child" means a child:
>
> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

[9]In short, the findings of emotional abuse were based upon the following findings of fact regarding the children. The oldest child, who was in high school, wore long pants and hooded sweatshirts to school to hide his welts even though the weather was warm. The two middle children, who were in elementary school, were required to be searched by the school nurse upon their arrival at school, and their belongings were sanitized each morning. Bedbugs were found in the girls' classrooms, and both rooms had to be professionally exterminated. Furthermore, the older girl reportedly became very emotional and did not want to discuss the bedbugs. Finally, the younger child slept during her preschool nap time, while many of her peers did not; she was described as being excessively sleepy at school, which

2

ointment, as Mother had claimed she had done, or eliminated the bedbugs from their home. The court also adjudicated Father and Mother as abusing parents.[10] Following the adjudicatory order, both parents moved for a post-adjudicatory improvement period.

Thereafter, the circuit court held a dispositional hearing and entered its dispositional order on October 15, 2015. The circuit court observed that neither parent could recall any details about the services that DHHR had provided during its earlier dealings with the family and that neither parent could identify what they would need to do in the present case in order to regain custody of their children. The court further noted DHHR's objection to a post-adjudicatory improvement period insofar as it had provided services addressing house cleanliness on two prior occasions; the parents could not remember anything they had learned from those services and were again exhibiting signs of an unkempt home; and DHHR claimed it had no new or additional services it could provide the family in this regard. Based upon these findings, the circuit court denied the parents an improvement period, concluding that they had not demonstrated that they would be likely to fully participate therein or comply with the terms thereof and that there is no substantial likelihood that they could correct the conditions resulting in the children's adjudication of neglect.[11] Additionally, the court terminated the parents' custodial rights to their children,[12] approved DHHR's placement of

---

was attributed to the fact that her nighttime sleep at home may have been interrupted by the bedbugs.

[10]"'Abusing parent' means a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." W. Va. Code § 49-1-201.

[11]A court may grant a post-adjudicatory improvement period when "[t]he respondent [parent] demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" W. Va. Code § 49-4-610(2)(B) (2015) (Repl. Vol. 2015).

[12]In deciding to terminate only the parents' custodial rights, the circuit court considered the wishes of the parents' oldest child, C.C.-3, that his parents's parental rights not be terminated. *See* W. Va. Code § 49-4-604(b)(6)(C) (2015) (Repl. Vol. 2015). Since the initiation of the subject abuse and neglect proceedings, the Legislature has amended the referenced statute; however, these changes are not relevant to the issues presented by the case *sub judice*. *See generally* W. Va. Code § 49-4-604 (2016) (Supp. 2016).

3

the children with a relative, and granted the parents post-dispositional visitation with the children.[13]

From these adverse rulings, the parents appeal to this Court.

In the instant proceeding, the parents, Father and Mother, appeal from the circuit court's rulings refusing their request for a post-adjudicatory improvement period and terminating their custodial rights. The standard of review for abuse and neglect cases has been explained by this Court as follows:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

On appeal to this Court, Father and Mother both assign error to the circuit court's rulings denying them a post-adjudicatory improvement period and terminating their custodial rights to their four children. Pursuant to W. Va. Code § 49-4-610(2)(B) (2015) (Repl. Vol. 2015),

> [a]fter finding that a child is an abused or neglected child pursuant to section six hundred one of this article, a court *may* grant a respondent a[] [post-adjudicatory] improvement period of a period not to exceed six months when: . . . (B) The respondent [parent] demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the

---

[13]However, given concerns about whether the bedbug infestation had been eradicated, the court ordered that visitation could not occur at the parents' home.

improvement period.

(Emphasis added). This Court previously has recognized that

> [t]he goal [of an improvement period] should be the development of a program designed to assist the parent(s) in dealing with any problems which interfere with his ability to be an effective parent and to foster an improved relationship between parent and child with an eventual restoration of full parental rights a hoped-for result. The improvement period and family case plans must establish specific measures for the achievement of these goals, as an improvement period must be more than a mere passage of time. It is a period in which the [D.H.H.R.] and the court should attempt to facilitate the parent's success, but wherein the parent must understand that he bears a responsibility to demonstrate sufficient progress and improvement to justify return to him of the child.

*In Interest of Carlita B.*, 185 W. Va. 613, 624-25, 408 S.E.2d 365, 377 (1991). Nevertheless,

> it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." Thus, a judgment regarding the success of an improvement period is within the court's discretion regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans.

>> The improvement period is granted to allow the parent an opportunity to remedy the existing problems. The case plan simply provides an approach to solving them. As is clear from the language of the statute, . . . the ultimate goal is restoration of a stable family environment, not simply meeting the requirements of the case plan.

*Carlita B.*, 185 W. Va. at 626, 408 S.E.2d at 378 (quoting *West Virginia Dep't of Human Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)).

In its dispositional order, the circuit court explained its reason for denying a post-adjudicatory improvement period as follows:

> [O]f particular note is the fact that the [parents] received extensive in-home services, including parenting and adult life skills, in the two prior cases before this Court, the last being just two years ago, and significantly, neither can recall what was taught and neither can identify what needs to happen so that

5

the children will not be similarly neglected or abused in the future. They simply assert that it is safe for the children to be returned because they have eradicated the bed bugs . . . which infested the home when this case commenced, without giving any consideration to the Court's finding that this case was primarily about emotional abuse.

> . . . .

Granting the adult respondents post-adjudicatory improvement periods . . . would be an exercise in futility, as neither parent can identify any need for change and prior services of the same type have already been afforded to the adult respondents, who cannot even recall what they might have learned.

As noted previously, the statutory standard for granting a parent an improvement period requires that he/she demonstrate, by clear and convincing evidence, that he/she will comply with its terms. *See* W. Va. Code § 49-4-610(2)(B). Fulfillment of some of an improvement period's terms without actual improvement of the conditions that led to the filing of the abuse and neglect petition simply is not enough; rather, the parent *must* actively remedy the conditions of abuse and neglect to demonstrate such improvement. *See Carlita B.*, 185 W. Va. at 626, 408 S.E.2d at 378. In the case *sub judice*, the circuit court determined that Father and Mother were not likely to substantially complete the terms of a post-adjudicatory improvement period given their inability to recall what they had learned during their prior two rounds of DHHR services and their propensity to perpetuate the conditions that had resulted in each of their previous abuse and neglect cases. As we previously have held, "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). *See also In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000) ("[W]hen a parent cannot demonstrate that he/she will be able to correct the conditions of abuse and/or neglect with which he/she has been charged, an improvement period need not be awarded before the circuit court may terminate the offending parent's parental rights."). Moreover, "[c]ases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syl. pt. 7, *In Matter of Brian D.,* 194 W. Va. 623, 461 S.E.2d 129 (1995). This is so because the overarching goal in abuse and neglect proceedings is to protect the subject children. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. pt. 3, *In re Katie S.,* 198 W. Va. 79, 479 S.E.2d 589 (1996). *Accord* Syl. pt. 8, in part, *In re Willis,* 157 W. Va. 225, 207 S.E.2d 129 (1973) ("Once a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been

neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody.").

Given this family's extensive history with DHHR, it is apparent that an improvement period likely would only prolong the inevitable–the eventual removal of the children from the home–and further delay their permanency. *See* W. Va. R. P. Child Abuse & Neglect Proceeds. 43 (addressing expedient resolution of abuse and neglect proceedings). Accordingly, we affirm the circuit court's decision to deny Father and Mother a post-adjudicatory improvement period.

Father and Mother additionally assign error to the circuit court's decision to terminate their custodial rights to their four minor children. In deciding to terminate the parents' custodial rights and place the children with a relative, the court specifically noted that "[t]ermination of parental rights is too drastic a remedy under the facts of the case, and similarly, dismissal of the case because of claims that the bed bugs have been eradicated wholly fails to acknowledge that there was substantial emotional abuse of the children." The court further explained its termination of custodial rights only as based, in part, upon the wishes of the parents' oldest child who did not wish his parents' rights to be terminated: "Importantly, this disposition acknowledges the preference of [C.C.-3], the oldest [child] respondent, who does not wish to have the parental rights of his parents permanently terminated." *See* W. Va. Code § 49-4-604(b)(6)(C) (2015) (Repl. Vol. 2015) (directing court to consider wishes of children fourteen years old and older).

Under the circumstances of the case *sub judice*, we find that the circuit gave proper credence to the wishes of C.C.-3 while simultaneously protecting the best interests of all four children and facilitating their achievement of permanency. Therefore, we affirm the circuit court's decision to terminate only the custodial rights of Father and Mother.

We further find that the circuit court correctly found that post-termination visitation would serve the children's best interests. With respect to post-termination visitation, we previously have held that,

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be

7

detrimental to the child's well being and would be in the child's best interest.

Syl. pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

From the parties' status updates, it appears that Mother visits with the children daily, and Father also visits with the children, but less frequently, and that this visitation has been taking place since the time of the court's adjudicatory hearing. Such an arrangement appears to be working well in this case and serves the children's best interests given their established emotional bond with their parents and the express wishes of C.C.-3 to continue his relationship with them. Therefore, the parties are directed to continue to permit and encourage post-termination visitation between Father, Mother, and their children, until such time that the court determines such visitation is no longer in the children's best interests.

For the foregoing reasons, the October 15, 2015, order of the Circuit Court of Roane County is hereby affirmed.

Affirmed.

**ISSUED:**     September 22, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II