STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **T.N.-1, T.N.-2, T.N.-3, K.N., and H.N.**

**No. 17-0565** (Mingo County 16-JA-25, 16-JA-26, 16-JA-27, 16-JA-28, & 16-JA-29)

## MEMORANDUM DECISION

Petitioner Mother A.W., by counsel Karen S. Hatfield, appeals the Circuit Court of Mingo County's May 22, 2017, order terminating her parental rights to T.N.-1, T.N.-2, T.N.-3, K.N., and H.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cullen Younger, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in finding that termination of her parental rights was in the children's best interests.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, the DHHR filed an abuse and neglect petition against petitioner and the father. The DHHR alleged that petitioner had a significant history with Child Protective Services ("CPS") in both Kentucky and West Virginia. In 2014, CPS in Kentucky removed the children from petitioner's custody for one year due to allegations concerning domestic violence, parenting issues, budgeting issues, and substance abuse. Petitioner was provided services at that time and regained custody of the children following completion of an improvement period. The DHHR further alleged that it received a referral in February of 2016 following an altercation between the parents in which the father kicked petitioner and the children out of the home and then damaged the car petitioner was driving. The referral indicated that, following the altercation, petitioner dropped the children off at a friend's home with no clothing, school supplies, or money, stating that she would not be returning for them. The petition was ultimately

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because several children share the same initials, we will refer to them as T.N.-1, T.N.-2, and T.N.-3 throughout this memorandum decision.

based on petitioner's mental health issues, lack of stable home for the children, and ongoing domestic violence. Petitioner filed a response to the petition, denied all allegations of abuse and neglect, and requested that the petition be dismissed, or alternatively, that she be granted an improvement period.

In April of 2016, the circuit court held an adjudicatory hearing, during which a DHHR worker testified regarding her investigation of the referral. The DHHR worker went to the home of petitioner's friend who kept the children following the altercation between the parents and observed petitioner's damaged vehicle. The DHHR worker also interviewed T.N.-1, who stated that she heard the parents arguing but did not see them. The DHHR worker further testified that, in the days following the altercation, petitioner called the office repeatedly and was undecided as to whether she wanted to voluntarily relinquish her parental rights to the children. Based upon the evidence, the circuit court adjudicated petitioner as an abusing parent and granted her a post-adjudicatory improvement period.

During a dispositional hearing in May of 2017, the circuit court heard the testimony of a pediatric nurse practitioner, a therapist, and a DHHR employee. Both the nurse practitioner and the therapist testified that the children disclosed physical and sexual abuse by the parents. The therapist also testified to the emotional impact on the children, including an incident in which she was called to the foster home of five-year-old T.N.-2 after he made suicidal threats. The DHHR employee testified that the DHHR provided petitioner with in-home individualized parenting classes, adult life skills classes, and anger management counseling. The DHHR employee also stated that petitioner obtained housing for her family. After hearing testimony, the circuit court found that petitioner was unwilling or unable to provide adequately for the needs of the children, that there was no reasonable likelihood that petitioner could correct the conditions of abuse, and that termination of petitioner's parental rights was necessary for the children's welfare. Accordingly, the circuit court terminated petitioner's parental rights.[2] It is from the May 22, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[2]In addition to the termination of petitioner's parental rights, the father voluntarily relinquished his parental rights. According to the parties, T.N.-1 and T.N.-3 are in a foster home together; K.N. and H.N. are in a second foster home together; and T.N.-2 is in a third foster home. According to the DHHR, the permanency plan for the children is adoption in their current foster homes.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that termination of her parental rights was in the children's best interests. As support for her argument, petitioner alleges that she complied with the terms of her improvement period and corrected the allegations contained in the petition. Specifically, petitioner states that she was adjudicated as an abusing parent based on mental health issues, lack of a stable home, and ongoing domestic violence. Petitioner states that she underwent a psychiatric evaluation; obtained suitable housing; and separated from her husband, ending the incidents of domestic violence. However, we find petitioner's arguments to be without merit. Contrary to petitioner's argument, the record is clear that petitioner did not successfully correct the conditions of abuse. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon findings that there was no reasonable likelihood that the conditions of abuse and/or neglect could be corrected and that termination was necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Petitioner failed to show that she was likely to correct the conditions of abuse and neglect in the near future. Petitioner underwent a psychiatric evaluation, but this evaluation was not part of the record on appeal and no evidence was provided showing that she complied with any of the evaluating psychologist's recommendations. Further, the DHHR employee testified that petitioner would sometimes comply with services, while other times she was hard to reach. While noting that she did obtain housing, the DHHR employee stated that this was only one part of her improvement plan. We have previously held that it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dep't of Human Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990). Fully participating in an improvement period necessarily requires implementing the parenting skills that are being taught through services. *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015). This is petitioner's second time receiving services throughout an abuse and neglect proceeding. So while petitioner may have complied with some of her services, her behavior fails to demonstrate that she has improved her overall approach to parenting. In fact, petitioner was arrested for battery during the pendency of the underlying proceedings, showing that she has not corrected her violent behavior. Because the conditions of

abuse and neglect continued uncorrected, we find that termination was in the children's best interests.

Petitioner further alleges that the circuit court erred in terminating her parental rights based, in part, upon allegations of both physical and sexual abuse that were not contained in the petition. However, this Court finds that sufficient evidence to terminate petitioner's parental rights existed apart from the allegations of physical and sexual abuse. The evidence outlined above establishes that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. As previously mentioned, West Virginia Code § 49-4-604(b)(6) directs circuit courts to terminate parental rights upon such findings. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 22, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker