# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* A.C. and C.C.

No. 17-0879 (Kanawha County 14-JA-215 and 216)

## MEMORANDUM DECISION

Petitioner Mother B.R., by counsel Jennifer N. Taylor, appeals the Circuit Court of Kanawha County's September 15, 2017, order terminating her parental rights to A.C. and C.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she had not made substantial improvements to her parenting and in terminating her parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2014, the DHHR filed a petition that alleged petitioner was found "passed out in the middle of the street intoxicated" along with her boyfriend and her three year old infant, A.C., who was left unattended in a stroller. Petitioner still had a needle in her arm. Further, the petition alleged that petitioner (1) failed to provided food, clothing, and supervision to A.C. and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

C.C. ("the children"), (2) was not sufficiently motivated and organized to provide for the children's needs, and (3) her actions constituted "extreme maltreatment." The petition also alleged that the biological father was found incoherent in a hotel room "filled with blood, feces, pills and needles." One of the children, who was in his care at the time, was found unattended outside of the hotel room.

Petitioner and the father both stipulated to adjudication and admitted to a history of substance abuse that negatively affected their ability to parent. Petitioner was granted a post-adjudicatory improvement period with requirements to participate in supervised visitation, substance abuse treatment, random drug screens, adult life skills, parenting classes, a parental fitness evaluation, and a substance abuse evaluation.[3]

In December of 2015, after multiple review hearings and an unopposed motion by the guardian to continue the dispositional hearing, petitioner was granted a post-dispositional improvement period with the same services as the previous improvement period. The circuit court noted problems in the initial improvement period, including petitioner not participating in random drug screening or out-patient substance abuse treatment and not making sufficient progress in parenting. However, petitioner and the father did test negative on drug screens when the DHHR transported them to the screening location. Moreover, petitioner was working and maintaining housing at this time, which was a noted improvement.

The circuit court reviewed the post-dispositional improvement period and found petitioner was making enough progress to continue the improvement period. However, petitioner was not participating in drug screens or substance abuse therapy and issues were noted after an overnight visitation. Parenting providers continued to report that petitioner was not making enough progress in parenting and continued to have safety concerns.

In July of 2016, the circuit court terminated the post-dispositional improvement period for a lack of compliance. The circuit court was concerned that petitioner tested positive for marijuana and morphine after the March of 2016 hearing, was not participating in drug screens, and did not participate in substance abuse therapy for a month preceding the final review. The circuit court ordered that services continue until the dispositional hearing.

At the dispositional hearing, the circuit court heard testimony from service providers that petitioner was only partially participating in drug screening and some of the tests were positive for marijuana. The circuit court noted the provider's concerns that the father was not consistent with discipline. Ultimately, the circuit court ordered that petitioner's substance abuse therapy be discontinued and that extended overnight visitations begin.

---

[3]Although petitioner and the biological father were not living together at the time the petition was filed, soon thereafter they began to reside together and to jointly care for the children throughout the proceedings, until a month prior to disposition when they separated. The biological father's services mirrored petitioner's and they participated in many of those services together.

In February of 2017, the circuit court began reunification and gave petitioner and the father full custody of the children, with services to continue. The DHHR reported clean drug screens and that all overnight visitations were going well. Also, A.C. was noted to have made extraordinary progress while in his foster placement and was performing much better in school and around his sister. The circuit court noted that petitioner would need to enroll A.C. in a different elementary school and provide for his education. Ultimately, the case was continued for disposition with an order to continue services.

In May of 2017, the circuit court held a dispositional hearing and heard testimony about the preceding ninety days while the children were in petitioner's home. It was reported that A.C. was coming to school dirty, unfed, not prepared to participate in class, and was absent without excuse for multiple days. Additionally, A.C. was sent to school one day with a fever and earache or infection. A.C.'s grades dropped dramatically as a result. Further, the children stopped attending scheduled therapy sessions. A DHHR worker testified that petitioner's home was clean, appropriate, and with food for the children. The DHHR recommended the case be dismissed with services. The circuit court granted the Court Appointed Special Advocates' ("CASA") motion to re-engage with the children's therapist. Ultimately, the circuit court showed particular concern for these new education and hygiene issues and ordered that the dispositional hearing be continued for ninety days with continued services.

In August of 2017, the circuit court held the final dispositional hearing. By the final hearing, one of the father's screens returned a preliminary result for amphetamines. At first, the father denied using any drugs and instead insisted energy drinks caused a false positive. A DHHR worker confronted the parents with the preliminary result and Petitioner stated that she would force the father to leave the house if the confirmation result was a positive screen. Petitioner did not take any immediate action to remove the father. Later, the father admitted to a DHHR worker that he relapsed three times since the children were returned to the parent's care in February. A DHHR worker testified that the father stated that he was stressed because he was often left alone with the children, even when he believed petitioner was not at work, and the stress contributed to his relapse. After the positive drug screen was confirmed by laboratory testing, petitioner testified that she forced the father to leave the house. However, the father stated that he watched the children alone a few days after petitioner made him leave. Also, after the positive drug screen, petitioner took the children camping and invited their father, who stayed overnight at the campsite. Petitioner's older child, A.C., believed that petitioner took the children camping specifically so no one would know about the visit with their father. A DHHR worker testified that petitioner and the father continued to exhibit problems from the beginning of the case and testified that their home had an inadequate food supply, that the home was unfit for children, and that petitioner continued to provide inadequate supervision. Additionally, once the children were removed, both were noted to have staph infections; A.C.'s infection manifested as a large and painful boil. Further, A.C. had an infected splinter that was wrapped in duct tape. The DHHR worker testified about an earlier incident when petitioner covered splinters with duct tape and that she had advised petitioner not to do so in the future.

Following all testimony and argument, the circuit court found that petitioner failed to complete her post-dispositional improvement period. Specifically, the circuit court found petitioner failed to supervise the children properly, permitted the children to be cared for by

3

inappropriate people, failed to provide appropriate medical attention, failed to maintain the home and have adequate food for the children, and failed to ensure the children attended school regularly. Additionally, petitioner allowed the children to be around their father when she knew he tested positive for illicit drugs. Further, the circuit court found that petitioner had not responded to a reasonable family case plan and that there was no reasonable likelihood the conditions of abuse and neglect could be corrected in the near future. Ultimately, the circuit court terminated petitioner's parental rights in its September 15, 2017 order.[4] Petitioner appeals the order terminating her parental rights.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court clearly erred in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Specifically, petitioner argues that she substantially complied with the terms of the family case plan and that the circumstances that gave rise to the petition, particularly her substance abuse, were corrected. Petitioner asserts that the circuit court decided that her improvement period was unsuccessful based upon a miscommunication with the DHHR involving the camping trip with the father and nothing more. We disagree.

West Virginia Code § 49-4-604(b) provides that "upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the [children]," then the circuit court may terminate the parental rights of an abusing parent. West Virginia Code § 49-4-604(c) provides that these conditions exist when "the abusing adult or adults have demonstrated an

---

[4]In addition to the termination of petitioner's parental rights, the children's father's parental rights have been terminated. According to the DHHR and the guardian, the children are currently placed in a foster home together. The permanency plan is adoption in that foster home.

inadequate capacity to solve the problems of abuse or neglect on their own or with help." For example, when "the abusing parent . . . [has] not responded to . . . a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of a child as evidenced by the continuation . . . of [the] conditions." West Virginia Code § 49-4-604(c)(3). When considering whether an abusing parent responded to a reasonable family case plan, the circuit court must consider what progress, if any, was made during the abusing parent's improvement period.

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of *all the circumstances of the case* to justify the return of the [children].

Syl. Pt. 2, *In re C.M.*, 235 W.Va. 16, 770 S.E.2d 516 (2015) (emphasis added).

The record is clear when considering all circumstances that petitioner did not make sufficient improvement in her parenting. Two review hearings were held after petitioner regained full custody of the children and both illustrated major concerns. Between February of 2017 and May of 2017, A.C., petitioner's oldest child, went to school unfed and dirty and was often absent without excuse. As a result, A.C.'s performance in school deteriorated. A.C. was sent to school with an ear infection and a high fever, without any treatment at home. By the beginning of March of 2017, neither A.C. nor C.C. were taken to their therapist to continue therapy. Initially, when workers conducted home visits, they found that the home was clean and well stocked with food; however, those conditions deteriorated. By August of 2017, the DHHR concluded that the home was filthy and without any easily accessible food for the children. Further, both children had staph infections, which A.C. described as very painful. Moreover, an infected splinter in A.C.'s foot was covered with duct tape. Notably, petitioner attempted this duct tape treatment previously, and the DHHR explained that it was unacceptable. Additionally, petitioner allowed the father of the children to provide supervision, even after he tested positive for drugs. The father admitted he had relapsed three times since February of 2017, but was living in the house with petitioner and the children throughout. Petitioner argues that she took appropriate steps to remove the father after his positive drug screen in June of 2017. Yet petitioner took no steps to remove the father before the laboratory confirmed he was using drugs, and instead chose to believe the father's excuse that the drug screen was positive due to "energy drinks," which are not known to include amphetamines. Finally, petitioner allowed the relapsed father visitation during the overnight camping trip with the children. Both the DHHR and A.C. believed the trip's purpose was to allow visitation between the children and their father without alerting the DHHR. The trip further highlights that petitioner was not concerned with the father's drug use and shows that petitioner continued to exercise poor judgement.

Petitioner was afforded substantial time to improve, yet her progress was very slow and the circuit court noted deficiencies at multiple review hearings. Nonetheless, the circuit court continued to give petitioner opportunities to improve. Once petitioner had sole custody of the children, even more issues arose in her parenting. Finally, after three years of services and

instruction, a basic level of medical and educational care was not provided to the children and petitioner continued to exercise poor judgement and insufficient supervision. When considering the lack of petitioner's improvement over the length of the case, we find that the circuit court did not clearly err in finding there was no reasonable likelihood that the conditions of abuse or neglect could be corrected in the near future.

Petitioner next argues that the circuit court's dispositional order improperly considered abuse or neglect that was not alleged in the original petition. Petitioner asserts that allowing the children to be with their relapsed father, was a new and unalleged issue. There are two problems with this argument. First, the petition included allegations that petitioner failed to provide appropriate food, clothing, and supervision for the children. When considering the children's condition from February of 2017 through August of 2017, the record is clear that petitioner continued to overlook the needs of the children, including, but not limited to, the need for adequate supervision. Petitioner exhibited poor judgment when she allowed the relapsed father to supervise and visit with the children. Second, petitioner misconstrues the goal of an improvement period. "As is clear from the language of the statute, . . . the ultimate goal is restoration of a stable family environment, not simply meeting the requirements of the case plan." *In the interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991). Petitioner's children were going to school dirty, living in a filthy home, and were without accessible food. The circuit court could see the effect of the home environment on A.C. as his performance in school deteriorated. Additionally, C.C. was never enrolled in preschool and appeared dirty during the May home visit. "[I]t is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *Carlita B.*, 185 W.Va. at 626, 408 S.E.2d at 378 (quoting *W.Va. Dep't. of Human Serv. v. Peggy F.,* 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Petitioner exercised poor judgment by continuing to allow the father around her children. The circuit court correctly found that petitioner's overall approach to parenting was not improved. Ultimately, "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). The multiple painful medical conditions and educational issues that petitioner's children faced from February of 2017 through August of 2017 indicated that their best interests were not being served. Thus, we find that the circuit court properly considered all the circumstances petitioner's children faced in petitioner's care at disposition.

Finally, petitioner argues that the circuit court abused its discretion in terminating her parental rights when less-restrictive alternatives were available. Petitioner asserts that the circuit court could have ordered a post-dispositional improvement period for her and terminated the parental rights of the relapsed father. We disagree.

As noted above, West Virginia Code § 49-4-604(b) provides that a circuit court may terminate the parental rights of an abusing parent upon findings that there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected in the near future and that termination is necessary for the welfare of the children. The circuit court properly considered petitioner's lack of progress throughout this lengthy case and the children's need for permanency. Petitioner could not meet the needs of her children despite three years of services and instruction. Further, petitioner's request for a second post dispositional improvement period

is not permitted by West Virginia Code § 49-4-610. We have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . ." *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Therefore, we find that the circuit court did not abuse its discretion in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 15, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker