STATE OF WEST VIRGINIA

FILED

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **E.T.-1 and E.T.-2**

**No. 18-0237** (Taylor County 17-JA-15 and 16)

**MEMORANDUM DECISION**

Petitioner Mother R.T., by counsel Gregory Michael, appeals the Circuit Court of Taylor County's February 5, 2018, order terminating her parental rights to E.T.-1 and E.T.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Ashley V. Williams Hunt, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available and when she substantially complied with her post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the father. The DHHR alleged that the parents had a history of domestic violence in the home. In 2015, petitioner obtained a Domestic Violence Protective Order ("DVPO") against the father after he reportedly used force against her, causing her a head injury that required staples to close. Petitioner later dismissed the DVPO. Most recently, petitioner sought a DVPO against the father in January of 2017 after he loaded a rifle, put it to petitioner's head, and told her he was going to kill her if she did not give him money. When petitioner did not have the money requested, the father told her to gather her belongings and leave the residence. Petitioner was prohibited from taking the children with her. The DHHR also alleged that, at some point during this incident, the father verbally abused petitioner, grabbed her hair, threw her on the ground, pushed her head against the floor, hit her, pulled her up from the ground by her hair, shoved her

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as E.T.-1 and E.T.-2, respectively, throughout this memorandum decision.

against the wall, and pushed his hand on her face. Despite the father's being a convicted felon and being prohibited from possessing firearms, law enforcement officers found firearms in the home and observed the television to be shattered from what appeared to be a bullet hole. The DHHR further alleged that when it attempted to take custody of the children, petitioner concealed them for several hours and did not cooperate until she was threatened with arrest. Finally, the DHHR alleged that petitioner continued to maintain contact with the father in direct violation of the DVPO. Based upon these allegations, the DHHR concluded that petitioner abused the children by exposing them to domestic violence, failing to separate the children from the father, allowing firearms in the home with a convicted felon, preventing the DHHR from obtaining custody of the children, and failing to protect the children.

In March of 2017, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition. The court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a three-month post-adjudicatory improvement period. Subsequently, the guardian requested that petitioner be granted a three-month extension to her post-adjudicatory improvement period based on her compliance. The guardian noted that the children had recently been placed back in the home with petitioner. The circuit court granted the guardian's request for the extension of petitioner's post-adjudicatory improvement period.

In December of 2017, the maternal grandmother sent a letter to the circuit court relaying her belief that petitioner had begun to associate with the father in violation of court order. Following receipt of the grandmother's letter, the circuit court ordered the immediate removal of the children from petitioner's care. After investigating the matter, the DHHR filed a summary with the circuit court in which it alleged that petitioner resumed her relationship with the father and that they had been seen together in public. The DHHR also indicated that, after the entry of the order granting immediate removal, petitioner's brother reported that petitioner had a black eye and had requested that he transport her to the father's home. A Child Protective Services ("CPS") worker and law enforcement officers proceeded to petitioner's residence at that time. Petitioner's brother arrived at the residence shortly thereafter and petitioner, the father, and the children were present in the vehicle. Petitioner explained to the CPS worker and officers that she received the black eye during a car accident in which she was the passenger, but denied that the father was with her. She reported that this was her first contact with the father since the petition was filed. However, the father reported that he was with petitioner during the alleged car accident. The father was arrested at that time. The DHHR's summary also stated that petitioner later told a CPS worker that she was with the father because he was going to help her buy a trailer and told a service provider that the father had not been abusive towards her since they resumed their relationship. Based on these events, the DHHR recommended termination of petitioner's parental rights.

The circuit court held a dispositional hearing in January of 2018, wherein petitioner requested an extension of her post-adjudicatory improvement period. Petitioner testified that the maternal grandmother was "over-reacting" and that she had only been having contact with the father for a few weeks because he was going to buy her a car. According to petitioner, she and the father were on their way to look at cars on the day he was arrested. Further, she denied that she and the children were staying with the father and stated that she understood that the children

were prohibited from having contact with the father. After hearing evidence, the circuit court noted that petitioner continued to commit child abuse and/or neglect against the children during the pendency of the proceedings by allowing them to have contact with the father and willfully placing the children in harm's way, which evidenced a lack of progress and insight into her parenting deficiencies. Ultimately, the circuit court found that there were no less-drastic alternatives than removal of the children from petitioner's care and that the children's best interests required removal. Accordingly, the circuit court denied petitioner's request for an extension of her post-adjudicatory improvement period and terminated her parental rights. It is from the February 5, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available and when she substantially complied with the terms of her post-adjudicatory improvement period. Petitioner argues that the circuit court should have granted her an alternative disposition pursuant to West Virginia Code § 49-4-604(b)(4), which states that a circuit court may "[o]rder terms of supervision calculated to assist the child and any abusing parent or battered parent or parents or custodian which prescribe the manner of supervision and care of the child and which are within the ability of any parent or parents or custodian to perform[.]" According to petitioner, she became aware in December of 2017 that her "dependency on [the father] jeopardized her parental rights [and the circuit court] erred in not [o]rdering terms of supervision, i.e., intensive counseling to address these issues." We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's

---

[2]The parents' parental rights were terminated below. The permanency plan for the children is adoption by a relative.

welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here, the record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner was granted a post-adjudicatory improvement period and satisfactorily complied with services such that she was granted an extension and the children were returned to her care. However, despite participating in services throughout her improvement period and its extension, petitioner returned to the same behavior which led to the filing of the petition. The DHHR presented evidence that after the children were returned to her care, petitioner resumed her relationship with the father and allowed the children to be in his presence, in violation of court order and despite his violent history. Petitioner testified at the dispositional hearing that even though she knew that the father was prohibited from having contact with the children, she believed her mother, who reported her actions to the circuit court, "over-react[ed]."

We have previously held that "[I]t is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In the Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991)(quoting *W.Va. Dep't of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Petitioner exercised poor judgment by continuing to allow the father around her children. Indeed, her testimony at the dispositional hearing suggested that petitioner did not understand the gravity of her actions. Further, in her brief on appeal, petitioner asserts that her continued relationship with the father and the potential ramifications only "became obvious in December of 2017," which was after the extension of her improvement period had been granted and the children had returned to her care. Thus, it is clear that while petitioner may have complied with some of the services offered to her throughout her improvement period, she did not change her attitude or approach to parenting and, as such, did not meaningfully follow through with the case plan aimed at addressing the conditions of abuse. Contrary to petitioner's assertions that the circuit court should have granted her a less-restrictive disposition in light of her "considerable compliance," we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, In re R.J.M., 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based upon the evidence, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the children's welfare. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 5, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating