# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* A.R. and J.M.

No. 20-0449 (Kanawha County 19-JA-451 and 19-JA-491)


## MEMORANDUM DECISION


Petitioner Mother A.M., by counsel Christopher C. McClung, appeals the Circuit Court of Kanawha County's April 9, 2020, order terminating her parental rights to A.R. and J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without affording her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed a child abuse and neglect petition against petitioner after receiving a referral from her landlord that he found one-year-old A.R. alone in the downstairs of the home with a soiled diaper. The child's sippy cup appeared that it had been empty for several hours and the diaper was so heavy that it hung off of her body. It was determined that the child had been left alone for at least three hours. When the DHHR worker searched the home for a diaper, petitioner appeared from her bedroom upstairs, which had been blockaded with large totes. Petitioner became belligerent and cursed and yelled at the worker and the child. Petitioner then took the child and locked her in the bedroom with her husband, resulting in law enforcement removing the child. Petitioner was pregnant at the time. Along with this incident, the DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

alleged that petitioner had a referral as recent as June of 2019 for lack of supervision because the child had fallen several times. In that referral, petitioner claimed that A.R. kept falling off of the bed and out of the highchair because the child was autistic and would not listen to petitioner, although the record shows that the child has never been diagnosed with that disorder. Finally, the DHHR specifically alleged that A.R. was not properly supervised, clothed, or fed, and that she was placed in an unsafe environment. The DHHR amended the petition in August of 2019, after petitioner gave birth to J.M.

At an adjudicatory hearing held in September of 2019, a Child Protective Services ("CPS") worker testified consistently with the allegations in the petition regarding the specifics of the landlord's referral. According to the worker, during the investigation petitioner emerged from her bedroom and was immediately irate and uncooperative. The worker further confirmed that law enforcement eventually had to remove the child from petitioner. Additionally, the worker explained that petitioner had two prior substantiated CPS referrals, including one incident where A.R. was injured after falling off of the bed. Finally, the worker testified that she initially placed A.R. with petitioner's sister but could not keep the child in that home due to the sister's history of CPS interventions and that this sister later became belligerent at the hospital when the worker removed J.M. after his birth. Next, petitioner testified and denied the allegations, asserting that someone paid the landlord to contact CPS and that he illegally entered her home. She further denied any inappropriate behavior when A.R. was removed. Having heard the evidence, the circuit court adjudicated petitioner as an abusing parent. The circuit court then ordered that petitioner participate in supervised visits and submit to a forensic psychological evaluation.

Petitioner underwent a psychological evaluation in October of 2019. The evaluator raised concerns with petitioner's judgment as she relied on her sister for childcare, despite her sister's extensive CPS involvement. Rather, petitioner claimed that she and her sister were appropriate caregivers. When asked why her bedroom door had been barricaded with three large totes, petitioner answered that the landlord "torment[ed]" her and her husband and they "had to get away." Petitioner also claimed that the child had only been left alone for minutes, not hours. The evaluator noted that petitioner holds "significant negative perceptions" of A.R., which has resulted in little attachment or bond with the child. The evaluator concluded that "[g]iven her utter failure to accept responsibility and to exhibit insight, her highly dysfunctional personality traits and limited intellect, and her concerningly negative perceptions of [A.R.], [petitioner's] prognosis for improved parenting, within a reasonable degree of psychological certainty, is very poor." Finally, the evaluator stated in the recommendations section of the evaluation that "[w]ithout acceptance of responsibility, there is no reason to believe [petitioner] would benefit from services."

In November of 2019, the circuit court held a status hearing, wherein it reviewed and accepted petitioner's psychological evaluation into the record. The court discontinued petitioner's supervised visits with the child after petitioner live-streamed videos of the visits, complained about the foster mother, and gave "puffs" of her asthma medicine to A.R. during one visit.

The circuit court held a final dispositional hearing in February of 2020. A CPS worker recommended termination of petitioner's parental rights due to her failure to acknowledge the abuse. The worker stated that although petitioner had participated in services since May of 2019, petitioner had made no acknowledgments whatsoever and, therefore, had not benefited from the

services. Next, petitioner testified that she was participating in parenting classes but had no housing due to her eviction from the apartment. Petitioner also admitted to leaving A.R. alone in the living room for over three hours and acknowledged that she had prior substantiated investigations with CPS regarding the lack of food in the home and A.R. falling off the bed on multiple occasions. Petitioner claimed that DHHR workers were harassing her at work. During her testimony, petitioner read a statement she prepared, wherein she flatly denied that the children were abused or neglected. Finally, petitioner stated that she planned on moving out of the state to live with J.M.'s father, despite his abandonment of the proceedings and likely termination of his parental rights. At the close of evidence, petitioner moved for a post-dispositional improvement period. Ultimately, by order entered on April 9, 2020, the circuit court denied petitioner's motion for an improvement period, finding that petitioner accepted no responsibility because of her adamant denial of any abuse and neglect of the children. The circuit court further found that petitioner had not benefited from services due to this denial. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests. Petitioner appeals this dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in not affording her an improvement period because her testimony at the dispositional hearing established that she made improvements throughout the case, participated in all services offered, and maintained employment. However, petitioner's argument on appeal ignores the fact that she continued to deny that she abused and neglected the children throughout the proceedings, even going so far as to read a prepared statement at the dispositional hearing to that effect. By refusing to acknowledge the conditions of abuse and neglect at issue, petitioner rendered them untreatable. *In re Timber M.*, 231 W. Va. 44,

---

[2]The parental rights of the father of A.R. were terminated below, as were the parental rights of the father of J.M. The permanency plan for the children is adoption in their current foster home.

55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense."). Further, this Court has repeatedly stressed that circuit courts have discretion to grant or deny improvement periods and that an improvement period may be denied when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Because petitioner did not take the basic step of accepting the truth of the allegations against her, we find no abuse of discretion in the circuit court's denial of her motion for an improvement period

Petitioner also alleges that termination of her parental rights was in error, arguing that the results of her psychological evaluation "were not sufficient to justify termination of [her] parental rights and the relocation to another state by the family unit was not unreasonable in light of [J.M.'s father's] employment."[3] We disagree and find petitioner's argument to be without merit.

The issue of termination is again decided by petitioner's repeated refusal to acknowledge the issues of abuse and neglect at issue. Given that petitioner rendered these conditions untreatable by her failure to acknowledge them, it is clear that the circuit court had before it sufficient evidence upon which to base its finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Although the record

---

[3]Within petitioner's argument, she appears to attack the validity of the petition. Also, petitioner briefly mentions "capacity issues" and that she is at a "lower functioning level." However, petitioner fails to cite to a single case or the appendix record in support of these assertions. These failures are in direct contradiction of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to these assertions is inadequate and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address these issues on appeal.

shows that petitioner maintained employment, participated in parenting classes, submitted to a psychological evaluation, and participated in supervised visitations, her failure to acknowledge the basic nature of the allegations against her resulted in her failure to benefit from any of these services. This Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Further, the Court has addressed situations such as this by explaining that

> we have recognized that "'it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990).'" *In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995). Moreover, "'[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court . . . "regardless of whether . . . the individual has completed all suggestions or goals set forth in family case plans."' *In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991)." *In re Jonathan Michael D.*, 194 W.Va. at 27, 459 S.E.2d at 138.

*Id.* at 65, 754 S.E.2d at 751.

Based on petitioner's failure to acknowledge the conditions of abuse and neglect, we find no error in the circuit court's determination that there was no reasonable likelihood that these conditions could be substantially corrected. Additionally, petitioner's repeated failure to acknowledge these conditions also required the termination of her parental rights in order to ensure the children's welfare. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are to terminate parental rights upon these findings. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights as there was sufficient evidence to find that there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect in the near future and that termination of her parental rights was in the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 9, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6