399 S.E.2d 460

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES**

**v.**

**PEGGY F. and James F., Parents; Jammie F., Waikiki F., Cassaundra S., Gemini F., Cherish F., and Reginald F., Infants; and Donald S., Parent.**

**No. 19719.**

Supreme Court of Appeals of West Virginia.

Nov. 13, 1990.

John G. Ours, Petersburg, for Peggy F., and James F., Parents; Jammie F., Waikiki F., Cassaundra S., Gemini F., Cherish F., and Reginald F., Infants; and Donald S., Parent.

Roger W. Tompkins, Atty. Gen., Robert Schulenberg, Asst. Atty. Gen., Attorney General's Office, Charleston, for West Virginia Dept. of Human Services.

PER CURIAM:

Peggy F.[1] appeals from an order of the Circuit Court of Hardy County which terminated her parental rights to five of her minor children and placed a sixth child in the temporary custody of the Department of Human Services (DHS).[2] The circuit court found that Peggy F. was guilty of neglect and abuse of her children and that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. We agree and affirm the order of the circuit court.

Peggy F. is the mother of eleven children, six of whom are the focus of the current litigation. She has a history of involvement with DHS dating back to at least 1982. She has previously had her parental rights to two other children terminated.

DHS has received repeated referrals regarding the living conditions at Peggy F.'s home and the behavior of her children. Various criminal acts by the children have been reported, including assault, attacking neighbors with rocks and belts, shoplifting, and fighting. DHS workers visiting the home have found it to be filthy, without heat, and not adequately safeguarded for young children. Neighbors have reported that the children beg for food and dig through garbage. Two of the youngest children were found wandering outside in the cold in their nightclothes and wet diapers, wearing no shoes. The small children have been seen playing in the street and have been found several blocks from home without supervision. Neighbors report that the children are often left at home alone.

In April of 1988, Peggy F. voluntarily placed the six children who are the subject of this litigation in the custody of DHS in order to enter St. Joseph's Hospital for psychiatric treatment. She remained at St. Joseph's until May 11, 1988.

The children, ranging in age from one-and-one-half to fifteen years of age, were assigned to foster care and group homes,

---

1. We follow our traditional practice in domestic relations and other cases which involve sensitive facts and do not use the last names of the parties so as not to stigmatize them or their children. *See, e.g., Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987); *West Virginia Dep't of Human Serv. v. La Rea Ann C.L.*, 175 W.Va. 330, 332 S.E.2d 632 (1985).

2. The fathers of the children, James F. and Donald S., were also named in this action at the circuit court level. James F. initially attempted to gain custody of the children, but ultimately abandoned that cause and took no part in any further proceedings in this matter. Donald S. never made any appearance. The circuit court took no action regarding the parental rights of these men, and they are, therefore, not parties to this appeal.

as their individual needs dictated. At the time of their placement, the children all demonstrated emotional problems. These problems variously manifested themselves in nightmares, bedwetting, overeating, thumb sucking, crying, fear of adults, fear of males, fear of hot items, and extreme resistance to authority. During their time in the custody of DHS, most of the children have shown some improvement.

On May 18, 1988, DHS filed a petition for temporary custody in the Circuit Court of Hardy County, alleging abuse and neglect of the children.[3] A hearing on the petition was held on July 7, 1988, at which time Peggy F. was granted a six-month improvement period in accordance with W.Va.Code, 49–6–2(b) (1984).[4] DHS was ordered to prepare and submit a family case plan as required by W.Va.Code, 49–6D–3 (1984).[5]

The family case plan was filed on August 3, 1988. The plan required: (1) psychological evaluation of Peggy F., with possible amendments to the plan to be made based upon the findings, (2) visitation with the children by Peggy F., (3) maintenance of specified housekeeping standards by Peggy F., (4) participation by Steve D. (Peggy F.'s new husband) in specified aspects of the plan, (5) resolution of Peggy F.'s shoplifting charge followed by continued compliance with the law, (6) eradication of any drugs or alcohol in Peggy F.'s home, and nonattendance by the subject children at any functions where alcohol or drugs were used, (7) submission by Peggy F. of a childcare plan for all the children during her working hours, (8) maintenance of stable employment by Peggy F. and Steve D. and submission of a monthly budget, (9) pro-

**3.** During her stay in the hospital, Peggy F. had been evicted from her home. Although she sought the return of her children who were then in the custody of DHS, she had no home to offer them. This apparently caused DHS to institute the neglect petition.

**4.** W.Va.Code, 49–6–2(b) (1984), provides:

"In any proceeding under this article, the parents or custodians may, prior to final hearing, move to be allowed an improvement period of three to twelve months in order to remedy the circumstances or alleged circumstances upon which the proceeding is based. The court shall allow one such improvement period unless it finds compelling circumstances to justify a denial thereof, but may require temporary custody in the state department or other agency during the improvement period. An order granting such improvement period shall require the department to prepare and submit to the court a family case plan in accordance with the provisions of section three [§ 49–6D–3], article six-D of this chapter."

**5.** W.Va.Code, 49–6D–3 (1984), provides, in pertinent part:

"(a) Within the limits of funds available, the department of human services shall develop a family case plan for every family wherein a person has been referred to the department after being allowed an improvement period under the provisions of subsection (b), section two, or subsection (c), section five [§ 49–6–2(b) or § 49–6–5(c)], article six of this chapter, and for each family referred to the department for supervision and treatment following a determination by a court that a parent, guardian or custodian in such family has abused or neglected a child . . . . The fam-

ily case plan is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening those problems. Every family case plan prepared by the department shall contain the following:

"(1) A listing of specific, measurable, realistic goals to be achieved;

"(2) An arrangement of goals into an order of priority;

"(3) A listing of the problems that will be addressed by each goal;

"(4) A specific description of how the assigned caseworker or caseworkers and the abusing parent, guardian or custodian will achieve each goal;

"(5) A description of the departmental and community resources to be used in implementing the proposed actions and services;

"(6) A list of the services which will be provided;

"(7) Time targets for the achievement of goals or portions of goals;

"(8) An assignment of tasks to the abusing or neglecting parent, guardian or custodian, to the caseworker or caseworkers, and to other participants in the planning process; and

"(9) A designation of when and how often tasks will be performed.

"(b) In cases where the family has been referred to the department by a court under the provisions of this chapter, and further action before the court is pending, the family case plan described in subsection (a) of this section shall be furnished to the court within thirty days after the entry of the order referring the case to the department, and shall be available to counsel for the parent, guardian or custodian and counsel for the child or children."

curement of a home with adequate living space to accommodate the children, and (10) completion of a parenting skills program by Peggy F. and Steve D.

Hearings on the success of the improvement period were held on May 16 and 22, 1989. At the hearings, DHS contended that, although Peggy F. may have minimally met the requirements of the case plan, she had made no substantive changes and would not provide a suitable home for the children. DHS presented testimony of the evaluating psychologist who opined that Peggy F. had an antisocial personality and that symptoms of a similar disorder were apparent in several of the children. In addition, several social workers testified as to Peggy F.'s inability or unwillingness to properly act as a parent for her children. Peggy F. argued that she had substantially complied with the requirements of the case plan. She testified on her own behalf and offered the testimony of Steve D.

On June 6, 1989, the circuit court entered an order terminating Peggy F.'s parental rights to five of the six children. The exception was Cassaundra S., who was over the age of fourteen and did not want Peggy F.'s rights terminated. In compliance with W.Va.Code, 49–6–5(a)(6) (1988),[6] the court did not terminate her mother's rights over her objection. She was to remain in the temporary custody of DHS until her eighteenth birthday.

The court found that Peggy F. was guilty of neglect and abuse of her children and that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The court believed that, although Peggy F. had made some changes to comply with the case plan, there was no change in her underlying attitude to indicate that it would be in the best interest of the children not to terminate her parental rights.

Peggy F. appeals from that order of the circuit court, asserting that the weight of the evidence does not support its find-

ings and conclusions. We disagree. There was ample evidence offered to support the court's conclusion that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Stephen Townsend, the evaluating psychologist, noted in his report that Peggy F. accepts treatment or help when required to do so, but reverts to her earlier behaviors shortly after the termination of any such program. He diagnosed her as having a personality disorder resulting in antisocial behavior and an inability to conform to social norms. After conducting psychological tests on the children, he found them to have extensive emotional problems. However, the younger the child, the less severe the problems. This led him to conclude that the children were taking on Peggy F.'s personality disorder. Maxine Kessell, a social worker who had worked with Peggy F. for many years, testified that Peggy F. would do well for a period, then slip back into poor parenting. She stated that she had not noted much improvement in Peggy F.'s parenting abilities over the years. The guardian ad litem who represented the children recommended against continuation of the improvement period and agreed that termination of the parental rights was in the best interest of the children.

DHS is not obligated, as Peggy F. would have us believe, to prove its case by showing that she failed to comply with the family case plan. In Syllabus Point 1 of *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981), we held:

"*W.Va.Code*, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition ... by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which

---

6. W.Va.Code, 49–6–5(a)(6) (1988), provides, in pertinent part: "Notwithstanding any other provisions of this article, the permanent parental rights shall not be terminated if a child fourteen years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination."

the State Department of Welfare is obligated to meet this burden."

DHS was, therefore, entitled to prove its case by showing that, despite Peggy F.'s compliance with specific aspects of the case plan, she had failed to improve her overall attitude and approach to parenting. The circuit court did not err in finding Peggy F. to be an unfit parent.

■ The circuit court complied with the requirements of the statute in terminating Peggy F.'s parental rights. She requested, and was granted, a six-month improvement period, in accordance with W.Va.Code, 49–6–2(b) (1984).[7] As we noted in Syllabus Point 3 of *State ex rel. West Virginia Department of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987):

> "Under W.Va.Code, 49–6–2(b) (1984), when an improvement period is authorized, then the court by order shall require the Department of Human Services to prepare a family case plan pursuant to W.Va.Code, 49–6D–3 (1984)."

Such a plan was prepared for Peggy F. and filed with the circuit court. The purpose of the family case plan, as set forth in W.Va. Code, 49–6D–3(a), as we emphasized in *Cheryl M.*, 177 W.Va. at 693, 356 S.E.2d at 186, " 'is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.' " (Footnote omitted). The improvement period is granted to allow the parent an opportunity to remedy the existing problems. The case plan simply provides an approach to solving them. As is clear from the language of the statute, and as DHS argued, the ultimate goal is restoration of a stable family environment, not simply meeting the requirements of the case plan.

For the foregoing reasons, we affirm the decision of the Circuit Court of Hardy County.

Affirmed.

<hr/>

7. The pertinent part of W.Va.Code, 49–6–2(b), is set out in note 4, *supra*.