## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.F.**

**No. 25-244** (Kanawha County CC-20-2023-JA-386)

## MEMORANDUM DECISION

Petitioner Mother A.H.[1] appeals the Circuit Court of Kanawha County's March 21, 2025, order terminating her parental rights to B.F., arguing that the court erred in rejecting her proposed stipulation at adjudication and subsequently terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in November 2023 alleging that B.F., who had been placed in a legal guardianship with his grandmother, was living with the petitioner and a registered sex offender, C.P.[3] Further, the petitioner's home did not have running water. As a result, the petitioner, the child, and C.P. went to a local church for food and showers. The family was banned from the church after it was discovered that C.P. was a registered sex offender. The DHS also alleged that the grandmother fled to West Virginia from Ohio because of Child Protective Services ("CPS") involvement there and intended to flee to Florida due to the petition being filed in this case.

The circuit court held the preliminary hearing in January 2024 and ordered the DHS to provide services to the petitioner, including a psychological evaluation, parenting and adult life skills classes, random drug screens, supervised visitation, in-home services, and bus passes. At a hearing in April 2024, the circuit court ordered that the child be returned to the petitioner on a trial basis. Additionally, the court directed the DHS to continue services and conduct home visits to monitor the petitioner with the child. Later in April, the court granted the petitioner a

---

[1] The petitioner appears by counsel Matthew A. Victor. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Carl E. Hostler. Counsel Sandra K. Bullman appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The grandmother was initially granted guardianship of B.F. in Ohio. According to the record, in November 2023, the Summit County Court of Common Pleas in Ohio waived jurisdiction for the matter to proceed in the Circuit Court of Kanawha County.

preadjudicatory improvement period, the terms of which included the continuation of previously ordered services.[4]

In July 2024, B.F. was removed from the petitioner's home. At a hearing subsequent to removal, a CPS worker testified that she conducted an in-home visit on July 1, 2024, and the petitioner disclosed that she forcefully grabbed the child while trying to put him in a corner for punishment, which left marks and bruises on his shoulder.[5] The CPS worker observed these marks on the child, describing them as "claw marks" with bruising where the petitioner's fingers dug into the child's skin. Further, the CPS worker witnessed C.P. and the petitioner's husband, J.H., in the home, both of whom. are registered sex offenders. The petitioner admitted to the CPS worker that she knew that C.P. was not allowed to be in her home. The CPS worker also testified that the petitioner admitted that J.H. hit the child which caused his head to strike the wall. The petitioner told the CPS worker that she did nothing to stop J.H. and that the child "probably deserved it." The CPS worker also spoke with B.F., who confirmed that the petitioner grabbed him and left marks and that J.H. had hit him on multiple occasions. The CPS worker testified that the child had several mental health and behavioral issues, including post-traumatic stress disorder, depression, aggression, and inability to sleep, and that he was medicated to address these issues. Next, the petitioner testified, contrary to the CPS worker's testimony, that after she witnessed J.H. hit B.F., she forced him to leave the hotel room they were staying in and reported the incident. Additionally, she testified that J.H. was in jail and she intended to divorce him.

The circuit court held an adjudicatory hearing in October 2024. The petitioner requested that the court accept her stipulation to adjudication. While on the stand, the petitioner stipulated that she exposed B.F. to sex offenders, but that they were no longer in her life. Further, she admitted that J.H. had hit B.F., but denied that she forcefully grabbed B.F. leaving marks and bruises on his shoulder or that she had ever physically struck the child. After the petitioner's testimony, the DHS and the guardian moved the court to reject the petitioner's stipulation and take judicial notice of the testimony presented at earlier hearings. The court granted the DHS's motion and rejected the petitioner's stipulation, finding that the petitioner did not accept responsibility for her actions. The court considered the testimony presented at the previous hearings and found that the petitioner physically abused the child, that she did nothing to stop J.H.'s physical abuse, and that she knowingly allowed the child to be regularly exposed to registered sex offenders. Therefore, the court found that the petitioner was an abusing and neglecting parent.

The circuit court held a dispositional hearing in March 2025. A CPS worker testified that the petitioner participated in services but had not benefited from them, as evidenced by the child's second removal from her custody while she was receiving services. The petitioner testified that neither J.H. nor C.P. lived with her; however, she claimed that she felt compelled to maintain contact with C.P. because he posted her bond and threatened to withdraw it if she ended communication with him. The petitioner's parenting and adult life skills provider testified that the petitioner was compliant with services and was doing well, but expressed concern about the petitioner's ability to keep C.P. and J.H. out of her life based on the petitioner's statements that

---

[4] At this hearing, the circuit court terminated the grandmother's guardianship.

[5] The DHS filed an amended petition to include these additional allegations.

2

she still loved J.H. despite intending to divorce him. The petitioner also told the witness that she did not believe that C.P. and J.H. were bad people. The court found that, although the petitioner participated in services, she did not benefit from them, as evidenced by the "wholly unsuccessful" trial reunification that resulted in the child being further exposed to sex offenders. The court further found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the best interests of the child required termination of the petitioner's parental rights. Therefore, the court terminated the petitioner's parental rights to B.F.[6] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in rejecting her stipulation at adjudication.[7] Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires that a stipulation include both "(1) [a]greed upon facts supporting court involvement regarding the respondent's[] problems, conduct, or condition" and "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition." As we have explained, this rule "sets forth what is required of any stipulation the court accepts as a substitute for a contested adjudicatory hearing as a matter of due process, but it does not provide a *right* to stipulate simply because those requirements are met; the court retains discretion to accept or refuse it." *In re A.E.*, No. 24-675, 2025 WL 3287508, at *4 (W. Va. Nov. 25, 2025) (memorandum decision). Here, although the petitioner stipulated to exposing the child to registered sex offenders and to J.H.'s physical abuse, she refused to admit that she grabbed the child leaving bruising or that she struck B.F. The circuit court acted within its discretion in rejecting a stipulation that did not include admissions to conduct or deficiencies reasonably at issue, as alleged in the petition. As such, the circuit court did not err in rejecting the petitioner's stipulation and holding a contested adjudicatory hearing.

Additionally, the petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a less restrictive dispositional alternative. It is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected when, "based upon the evidence before the court, the abusing

---

[6] The father's parental rights were also terminated. B.F. is currently placed in a residential facility with a long-term goal of adoption by a certified foster family.

[7] The petitioner also argues that the circuit court should have granted her a post-adjudicatory or post-dispositional improvement period. However, the petitioner cites to no written motion for an improvement period of any kind. We have held that "[a] circuit court may not grant a[n] . . . improvement period under W. Va. Code § 49-4-610 . . . unless the respondent to the abuse and neglect petition files a written motion requesting the improvement period." Syl. Pt. 4, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021). Therefore, the petitioner's argument is without merit.

3

adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The petitioner argues that she was progressing in the services offered to her, and the court terminated her parental rights prematurely. However, in its dispositional order, the court emphasized that although the petitioner participated in services, she did not benefit from them. This was evidenced by the failed trial reunification and her continued contact with registered sex offenders after she received a preadjudicatory improvement period and was provided with services for more than a year. Notably, we have held that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). In addition to finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected, the court found that termination of the petitioner's parental rights was in the child's best interests. Courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse and be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 21, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III