**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **A.F.-1**

**No. 25-170** (Kanawha County CC-20-2023-JA-87)

**MEMORANDUM DECISION**

Petitioner Father A.F.-2[1] appeals the Circuit Court of Kanawha County's January 31, 2025, order terminating his parental rights to A.F.-1, arguing that the circuit court erred in failing to grant him a post-dispositional improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In March 2023, the DHS filed an abuse and neglect petition alleging, in pertinent part, that the stepmother abused substances and physically, verbally, or mentally abused multiple children in the home, including A.F.-1.[3] The DHS also alleged that the petitioner exposed the child to the mother whose rights were previously terminated. Subsequently, the DHS amended the petition to include allegations that the petitioner physically abused older children in the home, abused marijuana, and would "disappear[] for days at a time."

At an adjudicatory hearing in September 2023, the petitioner stipulated to his failure to provide adequate housing due to the tumultuous environment of the home and failure to protect the child from a parent whose rights were previously terminated. The circuit court accepted the petitioner's stipulation and adjudicated him as an abusive and/or neglectful parent. The petitioner then moved for a post-adjudicatory improvement period, which the circuit court granted. The terms of the improvement period required the petitioner, among other things, to participate in domestic violence counseling, parenting classes, adult life skills classes, and drug screening. Later, the circuit court required the petitioner to participate in high conflict resolution therapy.[4] The circuit

---

[1] The petitioner appears by counsel Jason S. Lord. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Carl E. Hostler. Counsel J. Rudy Martin appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the child and the petitioner share initials, we use numbers to differentiate them.

[3] The proceedings below concerned additional children who are not at issue in this appeal.

[4] Due to the petitioner's health, all these services took place at the petitioner's home.

1

court also instructed the petitioner to submit to a psychological evaluation, which resulted in a "guarded" prognosis for improved parenting.

In October 2024, the DHS amended the petition again to include allegations that the petitioner was physically abusive towards A.F.-1 during supervised visits. As such, a second adjudicatory hearing was held in December 2024, where the circuit court took evidence on the matter. The visitation supervisor testified that, since March 2024, the petitioner was physically aggressive multiple times when disciplining A.F.-1. Additionally, the petitioner had multiple verbal outbursts, one of which involved him yelling degrading remarks at another child. The visitation supervisor also testified that the petitioner was repeatedly advised on different ways to manage his aggression during these visits but failed to consistently apply such instructions. Furthermore, the DHS highlighted prior evidence that the petitioner physically abused other children in the home. The circuit court found that the DHS proved by clear and convincing evidence that the petitioner abused A.F.-1 and adjudicated him as an abusive and/or neglectful parent.

Turning to the petitioner's improvement period, the court heard testimony from the petitioner's parenting and adult life skills service provider. This witness testified that, in October 2024, the petitioner physically restrained her when she arrived at his home to conduct a class, which caused services to be suspended. The service provider also stated that the petitioner failed to show any improvement in his parenting skills, as he would not take corrective redirection, blamed others for these proceedings, failed to control his anger, and did not take responsibility for his actions. The petitioner denied ever touching the service provider and denied any wrongdoing. Additionally, a Child Protective Services worker testified that the petitioner continued to exhibit aggressive behaviors throughout the entirety of the case, failed to follow simple rules, and that there were concerns he was unable to properly care for the children based on his conduct. Ultimately, the circuit court found that the service provider's testimony was credible and that the petitioner's aggression caused the provider to fear for her safety. Furthermore, the circuit court found that the petitioner "has not benefited from almost one year of services[,] . . . does not take responsibility for his actions, and . . . [his] aggressive behaviors continue, and in some circumstances have become worse." Finding that the petitioner's improvement period naturally expired, the circuit court then set the matter for disposition.

At the dispositional hearing in January 2025, the DHS again presented the testimony of the service provider, who reiterated the incident detailed above. The petitioner denied that an altercation occurred as well as any problems during his supervised visits. Further, the petitioner testified that he started counseling classes on his own accord; had always been compliant with services; and, despite his health problems, was a fit parent. As such, the petitioner requested a post-dispositional improvement period. However, the circuit court found that despite being afforded services over an extensive period, the petitioner failed to show improvement, as demonstrated by his continuous failure to manage his aggression. The circuit court proceeded to terminate the petitioner's parental rights, finding that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future. Highlighting the fact that these proceedings had been ongoing since 2023, then-five-year-old A.F.-1's age, and the need for permanency, the circuit court found that termination was necessary for A.F.-1's welfare.

Accordingly, the circuit court terminated the petitioner's rights to A.F.-1.[5] It is from the circuit court's dispositional order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). In his sole assignment of error, the petitioner asserts that the circuit court erred in terminating his parental rights to A.F.-1 rather than granting him a post-dispositional improvement period. We disagree. Pursuant to West Virginia Code § 49-4-610(3)(D), when parents have already been granted an improvement period, a circuit court may only grant a post-dispositional improvement period if it is "demonstrate[d] that since the initial improvement period, [they have] experienced a substantial change in circumstances," and "due to that change in circumstances, [they are] likely to fully participate in the improvement period." Additionally, "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Here, the petitioner was granted a post-adjudicatory improvement period. While the petitioner complied with some services, his limited participation did not constitute a substantial change in circumstances as he failed to improve his attitude and parenting issues. The testimony highlighted that the petitioner had multiple negative incidents resulting from his failure to manage his aggression as instructed, although he denied that these incidents occurred. The circuit court found that the petitioner failed to benefit from services, failed to take responsibility for his actions, and showed a decline in his ability to control his aggression as his behavior worsened over time. Furthermore, the time limitations for improvement periods were implicated due to the child being in foster care for over fifteen months at the time of disposition, and the circuit court did not find that any compelling circumstances existed to extend such time. *See* W. Va. Code § 49-4-610(9) (providing that "no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests"). Therefore, we conclude that the circuit court did not err in refusing to grant the petitioner's motion for an improvement period before proceeding to termination. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

Furthermore, we have consistently held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Pursuant to West Virginia Code § 49-4-604(d)(3), a court may find that there is no reasonable likelihood that conditions of abuse and neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts." Here, the petitioner failed to

---

[5] The mother's rights have also been terminated. The permanency plan for A.F.-1 is adoption in his current placement.

3

benefit from extensive services as he continued to exhibit aggressive behaviors that led to physical altercations, and his psychological evaluation resulted in a guarded prognosis for improvement. As such, the circuit court had ample evidence to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. Additionally, the extensive length of these proceedings, A.F.-1's young age, and the need to provide permanency supported the court's finding that termination was necessary for the child's welfare. Thus, we conclude that the circuit court did not err in terminating the petitioner's parental rights to A.F.-1. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit courts to terminate parental rights upon finding no reasonable likelihood conditions of neglect can be substantially corrected in the near future and when necessary for child's welfare).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 31, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4