**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.L. and C.L.**

**No. 25-54** (Webster County CC-51-2023-JA-26 and CC-51-2023-JA-27)

**MEMORANDUM DECISION**

Petitioner Mother M.L.[1] appeals the Circuit Court of Webster County's December 28, 2024, order terminating her parental rights to S.L. and her custodial rights to C.L., arguing that the circuit court erred in terminating these rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2023, the DHS filed an abuse and neglect petition alleging, in pertinent part, that the parents failed to provide S.L. and C.L. with suitable housing and exposed the children to domestic violence. Specifically, the DHS alleged that there were holes in the walls and ceiling, garbage and animal feces were found throughout the home, the children did not have any clean clothes, and S.L. was covered in bug bites and/or a rash.

At the adjudicatory hearing in August 2023, the petitioner stipulated to her failure to provide a suitable home for the children and exposing the children to domestic violence. The circuit court then adjudicated the petitioner as an abusive and/or neglectful parent of S.L. and C.L. In September 2023, the petitioner then filed a motion for a post-adjudicatory improvement period, which the circuit court granted. The terms of the improvement period required the petitioner, among other things, to remain substance free, successfully complete parenting classes, obtain employment, and maintain a suitable home. Additionally, the circuit court ordered that the petitioner and the father clean up the home within fourteen days.

---

[1] The petitioner appears by counsel Andrew B. Chattin. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Mackenzie A. Holdren appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, we note that the circuit court's order terminated the petitioner's parental rights to both children. As C.L.'s stepmother, the petitioner clearly exercised custodial rights. Therefore, as it relates to C.L., we will refer to this as a termination of the petitioner's custodial rights herein.

In November 2023, the circuit court returned physical custody of S.L. and C.L. to the parents. This was primarily due to concerns regarding the children's foster placement, the lack of other placement options, and some improvement having been made to the petitioner's home such that it met the "minimum" standard of being suitable for the children. However, the conditions of the home quickly deteriorated as it once again became "dirty and unkempt," resulting in the DHS removing S.L. and C.L. from the home again in February 2024. The circuit court upheld the DHS's removal at a hearing in March 2024 and noted that C.L.'s academic performance suffered when he was returned to the petitioner's care. According to the parties, the circuit court later granted the parents a post-dispositional improvement period.[3]

At the final dispositional hearing in November 2024, the circuit court heard expert testimony from the children's psychological evaluator that both S.L. and C.L. required a "structured and stable" living environment to address their behavioral issues. The DHS and the guardian outlined the history of the case, which showed the petitioner's failure to continuously maintain a suitable home as evidenced by the second removal of the children. Additionally, the guardian highlighted that this case was filed nearly seventeen months prior to the hearing and, except for the brief three-month period when custody was returned, the children had been in foster care for the entirety of these proceedings due to the petitioner's inability to maintain a suitable home. Furthermore, the petitioner's psychological evaluation resulted in an "extremely guarded" prognosis for improved parenting. When asked about the current state of the home, a DHS worker testified that there were "a lot of unfinished surfaces" in the home and that it needed flooring. Despite these issues, the DHS worker stated that the home was suitable and recommended that S.L., partially based on her young age, be gradually reunified with the parents, but that C.L. remain in his current placement to complete his program at the Mountaineer Challenge Academy where he would reach the age of majority. However, the DHS worker confirmed that the home was deemed suitable before, but these conditions quickly deteriorated mere months after the parents regained custody. The guardian disagreed with the conclusion that the home was suitable and proffered that subjecting the children to being "shuffled back and forth" because of the parents' repeated inability to maintain a proper home was not in the children's best interests. The petitioner testified that she had followed the terms of her improvement period as she remained sober; obtained employment; participated in parenting classes; and, except for the brief period after she regained custody, had maintained a proper residence. Ultimately, based upon the evidence, the circuit court found that the petitioner was "unable to provide the type of home environment" that the children required and that there was no reasonable likelihood that the petitioner could fix her "parental deficits" to substantially correct the conditions of abuse and neglect. The circuit court also highlighted that the children had been in foster care for close to fourteen months and remained there because the same neglectful housing conditions continued to resurface despite the petitioner receiving two improvement periods. Because the petitioner had not demonstrated in that lengthy timeframe that she was able to meaningfully address her housing conditions and to maintain the home in a suitable condition for the children, the circuit court concluded it was not in the children's best interest to return to the petitioner's care. As such, to provide permanency, the circuit court found that termination of the petitioner's parental rights was necessary for the children's welfare.

---

[3] The record remains unclear as to when the circuit court granted this improvement period or what terms the petitioner had to follow.

Accordingly, the circuit court terminated the petitioner's parental rights to S.L. and her custodial rights C.L.[4] It is from this order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner's sole assignment of error alleges that the circuit court erred in terminating her parental rights because she had remedied the conditions of abuse and neglect. We disagree. While it is true that the petitioner complied with most of the terms of her improvement period, we have highlighted that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Although the DHS stated that the house was suitable, the court ultimately found that the petitioner failed to truly remedy the conditions of neglect due to her inability to maintain a suitable home. Sufficient evidence supports the court's conclusion as the children were removed a second time from the petitioner's home during her improvement period as the same neglectful housing conditions that initiated these proceedings resurfaced and the petitioner's prognosis for improved parenting was extremely guarded.

As we have explained, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4 (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Accordingly, because of the petitioner's repeated failure to remedy the housing conditions and the negative impact it had on the children, termination was appropriate. In fact, the children were placed in foster care for approximately fourteen months during the span of the petitioner's two improvement periods, making additional time unavailable. *See* W. Va. Code § 49-4-610(9) (prohibiting, unless certain circumstances warrant it, any combination of improvement periods or extensions to cause a child to be in foster care "for more than fifteen months of the most recent twenty-two months"). As such, there was ample evidence for the circuit court to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help."). Furthermore, C.L.'s deficient academic performance while in the petitioner's care, the children's need for a stable home environment, and the circuit court's finding that the petitioner could not provide this type of home environment for the children provided the court with ample evidence to find that termination was necessary for the children's welfare. Circuit courts are permitted to terminate parental rights upon these findings without the use of less restrictive alternatives. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable

---

[4] The father's parental rights were terminated, as were the parental rights of C.L.'s mother. The permanency plan for S.L. is adoption in her current placement. C.L. has since turned eighteen and, therefore, has aged out of these proceedings.

likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))). Therefore, we conclude that the circuit court did not err in terminating the petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 28, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: March 24, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III