**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **E.L., T.D., and W.D.**

**No. 25-482** (Wood County CC-54-2023-JA-173, CC-54-2023-JA-174, and CC-54-2023-JA-175)


**MEMORANDUM DECISION**


Petitioner Mother A.D.[1] appeals the Circuit Court of Wood County's June 24, 2025, order terminating her custodial rights to E.L., T.D., and W.D., arguing that termination was in error because she corrected the conditions of abuse and neglect.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2023, the DHS filed a petition alleging that the petitioner and T.D. and W.D.'s father, D.D., abused and neglected the children by failing to properly supervise them, thereby allowing them to engage in inappropriate sexual behaviors with each other.[3] Additionally, the DHS alleged that the petitioner moved in with M.B., a man whose own children were removed from his home due to accusations that he sexually abused them. The petitioner asserted that M.B. was simply a roommate, but, in the children's forensic interviews, E.L. described him as the petitioner's boyfriend while T.D. described him as the petitioner's "boy toy." During W.D.'s interview, the then-five-year-old child stated he did not feel safe with the petitioner because of M.B. and disclosed that T.D. had touched his genitals and inserted his fingers into his anus on more than one occasion. The child also disclosed that he had seen E.L. nude and had witnessed T.D. touching E.L. while nude.

In August 2023, the circuit court held an adjudicatory hearing where the petitioner stipulated that she "was not appropriately protective of her children after finding out [M.B.] had his own children removed from his home and after finding out about the sexual contact between the siblings," and that she did not supervise the children appropriately, which allowed T.D. to continue engaging in sexually inappropriate behaviors. The court then granted the petitioner a post-

---

[1] The petitioner appears by counsel Wells H. Dillon The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General Lee A. Niezgoda. Counsel Katrina M. Christ appears as the children's guardian ad litem ("guardian"). Respondent Father S.L., who is the father of E.L., appears by counsel Eric K. Powell.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] T.D. and W.D. are full siblings while E.L. is T.D. and W.D.'s half-sibling.

adjudicatory improvement period, the terms of which included, among other things, parenting and adult life skills education, a psychological and parental fitness evaluation, individual therapy, and supervised visits with the children.

The petitioner underwent a parental fitness evaluation in October 2023 during which she told the evaluator that the petition was initiated out of vengeance by M.B.'s ex-spouse and blamed the children's inappropriate sexual behavior on television and social media. The evaluator concluded that the petitioner would benefit from intervention services and recommended, among other things, that she participate in therapy, maintain employment, and participate in parental education, specifically noting that she should be instructed on ways to supervise the children's use of electronics and social media.

The circuit court held several review hearings between December 2023 and September 2024, at which time the court granted the petitioner an extension of her post-adjudicatory improvement period. Throughout this time, the petitioner participated in supervised visits with the children, who continually displayed sexualized behaviors and made inappropriate comments during those visits. For example, at a visit in April 2024, T.D. commented about E.L.'s chest, prompting E.L. to grab and bounce her chest at him. During another visit, W.D. made reference to putting a stick in T.D.'s anus. A Court Appointed Special Advocate ("CASA") filed a report in April 2024 representing that the petitioner sent E.L. several photos of herself wearing lingerie and posing in "various provocative positions; some were [the petitioner] accentuating her breasts." The CASA concluded that the petitioner was "not gaining insight on protecting the children" and opined that her "inappropriate pictures only promote[ed] sexual overtures and behaviors to the family environment." At a May 2024 review hearing, the court denied the petitioner's oral motion for a post-dispositional improvement period. However, on July 10, 2024, the petitioner moved in writing for a post-dispositional improvement period, and, at a hearing on the same day, the court granted her motion. Thereafter, the CASA filed a report recommending that the court terminate the petitioner's parental rights because the sexual overtures in the home had not been addressed and the petitioner was "[unable] to properly assure the children's safety from sexual activities within the home." The DHS also filed a report recommending the same.

On April 21, 2025, the court held a final dispositional hearing during which the petitioner testified that she installed cameras in the home to monitor the children, established separate rooms for the children, and was no longer in a relationship with either D.D. or M.B. While the petitioner admitted that the children displayed inappropriate sexualized behaviors, she attributed these behaviors to things the children "picked up at school." Regarding the sexual contact between E.L. and T.D., the petitioner testified that they were "at an age where they [were] curious" and, when asked if she believed that T.D. had sexually abused W.D., she testified that she "[didn't] know what to believe." At the conclusion of the hearing, the guardian recommended that the petitioner's custodial rights be terminated so that she could potentially move for modification in the future and continue visits with the children, given their strong bond. In the resulting order, the court found that "despite twenty (20) months of services, the [petitioner] is unable to protect and supervise her children and keep them safe from further sexual abuse." Noting the children's continual highly sexualized behavior and the petitioner's choice to maintain relationships with individuals who have abused children in some way, the court found that the petitioner did not improve her poor decision-making abilities and failed to successfully complete her improvement period. The court

concluded that the children's welfare and best interests necessitated termination of the petitioner's custodial rights and terminated the same. It is from the dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred by terminating her custodial rights because she substantially corrected the issues for which she was adjudicated. Specifically, the petitioner asserts that she was no longer in a relationship with M.D. or D.D., had installed security alarms and cameras, and established separate bedrooms for the children. She further asserts that the DHS's witness "indicated she had no concerns regarding [the p]etitioner's visitation that was largely unsupervised," arguing that the court's concerns were "speculative and no different from concerns one would have for these three children in their current placements." We disagree. The circuit court is vested with the discretion to "determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Moreover, "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dept. of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)).

Here, ample evidence supports the court's conclusion that the petitioner did not make sufficient improvement to warrant the return of the children. After twenty months of services, the petitioner continued to minimize the gravity of the children's extremely troubling sexual behaviors and suggested that they learned such behaviors at school, despite direct evidence that the petitioner exposed E.L. to overtly sexual material *during her improvement period*. Further, the court found that the petitioner engaged in relationships with men who abused children and "allow[ed] the children contact with the[se] men, even after she [was] warned or ha[d] knowledge of the men's history." The court concluded that she failed to successfully complete her improvement periods and "did not improve her poor decision-making abilities," indicating her failure to improve her attitude and approach to parenting. The court expressed concern that the petitioner would not properly supervise the children and ensure they have no sexual contact with each other, especially in light of her reluctance to acknowledge the children's extreme conduct. Courts are permitted to terminate parental, custodial, and/or guardianship rights on this basis, and the circuit court here did not err in doing so. *See In re K.L.*, 247 W. Va. 657, 666–67, 885 S.E.2d 595, 604–05 (2022) (recognizing a parent's failure to participate in an improvement period is "a statutorily-recognized basis upon which this Court regularly affirms termination of parental rights"); *see also* W. Va. Code § 49-4-604(c)(6) & (d)(3) (permitting termination of parental, custodial, and guardianship rights where there is "no reasonable likelihood that the conditions of neglect or abuse can be

---

[4] D.D.'s parental rights to T.D. and W.D. were terminated, and the permanency plan for those children is legal guardianship in their current placements. S.L. is E.L.'s nonabusing father and his parental rights remain intact; however, E.L. has since reached the age of majority.

substantially corrected in the near future," including failure to respond to or follow through with a family case plan, and when necessary for the children's welfare).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 24, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III