**FILED**

**June 1, 2026**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **M.B.-1, M.B.-2, C.B., A.B., and E.B.**

**No. 25-508** (Jefferson County CC-19-2023-JA-59, CC-19-2023-JA-60, CC-19-2023-JA-61, CC-19-2023-JA-62, and CC-19-2024-JA-49)

**MEMORANDUM DECISION**

Petitioner Mother T.B.[1] appeals the Circuit Court of Jefferson County's July 7, 2025, order terminating her parental rights to M.B.-1, M.B.-2, C.B., A.B., and E.B., arguing that the circuit court erred in terminating her rights when she was likely to correct the conditions of abuse and neglect and without determining whether she could care for the children with intensive long-term assistance.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In November 2023, the DHS filed an abuse and neglect petition[3] detailing a long history of Child Protective Services ("CPS") intervention dating back to February 2023 concerning, among other things, the petitioner's learning disabilities; lack of suitable housing; substance abuse; medical neglect, including failure to comprehend the seriousness of A.B.'s medical issues and missing almost forty of the child's appointments;[4] and failure to properly supervise or care for the children. Prior to filing the petition, the DHS implemented various services to aid the petitioner in caring for her children, such as providing transportation to medical appointments and paying for the family's hotels when A.B. required medical attention. However, the DHS specifically noted that the petitioner refused to arrange for transportation, leading to missed medical appointments.

---

[1] The petitioner appears by counsel Michael Santa Barbara. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Susan MacDonald appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because two of the children share initials, we use numbers to differentiate them.

[3] When the initial petition was filed, E.B. was not yet born.

[4] Then two-year-old A.B. was diagnosed with a multitude of serious medical issues including congenital heart disease, hydronephrosis of the kidney, failure to thrive, muscle deformities of the face, problems swallowing, and bones in his head which fused too early. These issues require ongoing extensive medical care, treatment, and surgery.

The petitioner stipulated to the allegations in the petition at a hearing in January 2024, and the circuit court adjudicated her an abusive and/or neglectful parent of M.B.-1, M.B.-2, C.B., and A.B. The court then granted the petitioner's motion for a post-adjudicatory improvement period at a hearing in February 2024. The terms included, among other things, that the petitioner participate in drug screening, parenting classes, and individual counseling; complete a psychological evaluation and an addiction severity index screening; work with a life skills coach; obtain employment; and maintain stable housing.

The DHS amended its petition in July 2024 to include recently born E.B., alleging that the petitioner participated in limited prenatal care and abused substances during her pregnancy. Additionally, the DHS alleged that the petitioner struck M.B.-1 in the head during a supervised visit and screamed at the children during other visits, all of which led to visits being stopped. At the second adjudicatory hearing in February 2025, the petitioner denied that she physically abused M.B.-1 but stipulated that her actions demonstrated poor parenting and confirmed that she used marijuana during her pregnancy with E.B. The circuit court accepted these stipulations and adjudicated the petitioner as an abusive and/or neglectful parent of E.B.

Thereafter, in June 2025, the circuit court held the dispositional hearing. The petitioner testified that she obtained her own apartment and employment; was working with various programs to become financially self-sufficient; was prescribed medication to treat her depression; joined a wait list for individual counseling; completed parenting classes; and acknowledged that she failed to participate in required drug screening. Due to scheduling issues, the parties then reconvened to complete the dispositional hearing later that same month. The petitioner failed to appear for the rescheduled hearing but was represented by counsel. A DHS worker testified that, throughout the case, the petitioner failed to improve her parenting skills and tested positive for marijuana multiple times before she stopped participating in drug screening in September 2024. According to the worker, there was no documentation to support the petitioner's claim that she completed parenting classes and reports from the petitioner's life skills coach concluded that the petitioner could not parent all five of her children. Further, the worker explained that the petitioner never progressed to unsupervised visitation with the children due to striking M.B.-1. The court also considered the petitioner's psychological evaluation, which concluded that her IQ was between sixty-four and sixty-seven and was in the lowest one percent of intellectual ability. The evaluator indicated that the petitioner could function independently with supportive assistance, but that there were "further concerns regarding her parental abilities." Specifically, the evaluator found that the petitioner lacked the mental capacity to refuse drugs if offered and that "[i]t is most unlikely that she will be able to consistently parent all . . . [five] child[ren] over time without her own needs and desires not infrequently over-riding the needs of her children." Ultimately, the circuit court found that, while the petitioner obtained housing and a new job, the evidence established that she could not properly parent the children and, as such, there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect in the near future. Considering the children's need for permanency, the circuit court found that there was no less

restrictive alternative than termination and proceeded to terminate the petitioner's parental rights to all five children.[5] It is from this order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). To begin, the petitioner asserts that it was error to terminate her parental rights without first determining whether she could care for the children with intensive long-term assistance. As we have explained, "[w]here allegations of neglect are made against parents based on intellectual incapacity . . . , termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance." Syl. Pt. 4, in part, *In re Billy Joe M.*, 206 W. Va. 1, 521 S.E.2d 173 (1999). We cautioned, however, that "the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." *Id.* Here, the DHS provided the petitioner with assistance in the form of supervised visitation, parenting classes, a life skills coach, psychological evaluation, and drug screening. Additionally, even before the initiation of these proceedings, the DHS provided transportation services and paid for the family's hotel stays. Yet, despite receiving this assistance, the petitioner exhibited a decline in her parenting skills and failed to comply with various services afforded to her. Furthermore, although the petitioner improved her ability to be self-sufficient, both the petitioner's life skills coach and psychological evaluator concluded that she was still unable to properly parent her children. The circuit court ultimately determined that, based on the evidence, the petitioner failed to improve her parenting even with the above assistance in place. Accordingly, we conclude that the circuit court and the DHS complied with the requirements of *In re Billy Joe M.* and made such determination as soon as possible. *See also In re Maranda T.*, 223 W. Va. 512, 518-19, 678 S.E.2d 18, 24-25 (2009) (clarifying that even when applicable, *In re Billy Joe M.* does not require the DHS to *provide* intensive long-term assistance). Therefore, the petitioner is not entitled to relief.

The petitioner also argues that the circuit court erred in terminating her parental rights. We disagree. West Virginia Code § 49-4-604(c)(6) permits circuit courts to terminate parental rights upon finding that there is no reasonable likelihood that the conditions can be substantially corrected in the near future and when necessary for the child's welfare. According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." Here, the DHS presented evidence of the petitioner's lack of improved parenting skills along with her admitted noncompliance with drug screens, as the petitioner continuously tested positive for marijuana and altogether failed to participate in this service since September 2024. In fact, supervised visitation was stopped primarily because of the petitioner's conduct and admitted poor parenting. Compounded with this evidence, the petitioner also failed to appear for her final dispositional hearing. Although the petitioner made some improvement, we have repeatedly held that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing

---

[5] Both fathers' parental rights were terminated. The permanency plan for M.B.-1 is legal guardianship in her current placement. As for the rest of the children, the permanency plan is adoption in their respective placements.

'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Therefore, ample evidence supported the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future. To the extent that the petitioner argues a less restrictive alternative should have been employed, we have consistently held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Furthermore, the court considered the need to provide permanency for the children, supporting its conclusion that termination was necessary for the children's welfare. Accordingly, we conclude that the circuit court did not err in terminating the petitioner's rights to all five children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 7, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: June 1, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Thomas H. Ewing
Justice Gerald M. Titus III

**DISQUALIFIED:**

Justice Charles S. Trump IV

4